IN THE MATTER OF THE PETITION OF ORIGEN VANDENBURGH, APPELLANT, *v.* THE BROADWAY UNDERGROUND CONNECTING RAILWAY COMPANY AND OTHERS, RESPONDENTS.

*Corporation — board of directors to be chosen annually — effect of the failure of the board of directors to provide for it by a by-law — who are entitled to vote at an election held after the proper day therefor has passed — 1850, chap. 140 ; 1854, chap. 282 — R. S., part 1, chap. 18, tit. 4, secs. 5, 8 — Reduction of number of directors — 1864, chap. 582, sec. 3.*

The defendant was organized under the general railroad act on May 27, 1880, and on that day its officers, including a board of thirteen directors, were duly chosen.   The board of directors neglected to call any meeting of the stockholders for the election of directors, or to adopt any by-laws relating to and regulating the election thereof until March 20, 1882.   On that day they met and adopted a by-law, providing that such an election should be held annually on the first Monday of June, in each year, and called a meeting of the stock-

holders for that purpose to be held on June 6, 1882. At the same meeting they issued certificates of the defendant's capital stock to certain persons in payment of claims held by them against the company. At the meeting held on June 6th, the inspectors of election allowed the shares of stock so issued in March to be voted upon, against the objection of the owners of shares of stock which had been issued in 1880.

*Held,* that section 5 of chapter 140 of 1850, as amended by chapter 282 of 1854 required a board of directors to be chosen annually, and that the board of directors first chosen should adopt by-laws prescribing the manner of such election.

That in the absence of any by-law fixing a date within the year, the election should be held upon the recurrence in the following year of the day on which the first election was held, if that were a legal day.

That the failure to adopt the by-law or hold the election did not dissolve the corporation, nor relieve the directors from the duty imposed upon them by the statute, and that their action, in adopting the by-laws and calling the meeting of the stockholders, was lawful and valid.

That section 8, of title 4, chapter 18, of part 1 of the Revised Statutes, providing that where an election shall not be duly held on the day designated and appointed by the act incorporating the company, an election shall be held within sixty days immediately thereafter, and that "in all cases, no share or shares shall be voted upon, except by such person or persons who may have appeared on the transfer books of said company, to have had the right to vote thereon, on the day when, by the act of incorporation of such company, the election ought to have been held," was applicable to the election so held, and that the inspectors erred in allowing the shares of stock issued in March, 1882, to be voted upon.

At the election two tickets were voted upon, one containing the names of thirteen directors, and the other the names of seven directors. Upon a petition presented under section 5, of title 4, of chapter 18, of part 1 of the Revised Statutes, by persons who had voted the ticket containing the names of seven directors, to have the persons therein named declared entitled to that office:

*Held,* that the ticket was not void because it did not contain thirteen names. That no stockholder was bound to vote for any larger number of persons than he chose, and that any number of persons who might receive a majority of the lawful votes were elected, although there was a failure to elect the full number required by law.

That as the defendant's road did not exceed fifteen miles in length, the act of a majority of the stockholders in so voting a ticket containing the names of but seven persons, operated under section 3, of chapter 582, of 1864, to reduce the number of the directors of the company, from thirteen to seven.

That the court had power in their proceedings to declare the said seven persons to be the lawful directors of the defendant's company.

APPEAL from an order made at a Special Term, denying an application made by the petitioner.

The petitioner sought, under section 5, of title 4, of chapter 18, of part 1 of the Revised Statutes, to have an election of directors of the defendant company set aside, and have certain other persons declared to have been duly elected directors of the company.

*O. Vandenburgh,* appellant in person.

*Robert Sewell,* for the respondents.

DAVIS, P. J.:

The Broadway Underground Connecting Railway Company was organized as a corporation under the general railroad laws of this State, on the 27th day of May, 1880, and on that day its officers, including a board of thirteen directors, were duly chosen. The directors neglected to call another meeting of the stockolders for the election of directors until the 20th day of March, 1882, at which time a meeting of the stockholders was called by the board for the 6th day of June to elect thirteen directors and three inspectors of election. Pursuant to such call a meeting of the stockholders was held at the office of the company on the 6th day of June, 1882, at which time three persons, appointed inspectors of election by the board, officiated as such, and the several persons named in this proceeding with the company, as respondents, were declared to be elected directors for the ensuing year. The board of directors had also wholly failed to adopt any by-laws relating to and regulating the election of directors until the 20th day of March, 1882, at which time they adopted a by-law in substance prescribing that such election should be held annually on the first Monday of June in each year, which by-law was published thirty days before the election held on the 6th day of June, 1882. Prior to the 8th day of March, 1882, but 205 shares of the capital stock of the company had been subscribed or issued, 190 of which were issued in October, 1880, to the petitioner, and fifteen shares to other parties who respectively held one share each; and these several persons appear to be on the books of the company the only shareholders entitled to vote for directors at that time. On the 8th day of March, 1882, the directors audited accounts for legal services in favor of Messrs. Campbell & Page to the amount of $15,000, and in favor of Robert Sewell for $10,000; and on the thirteenth of March

following, 150 shares of fully paid stock were issued to Campbell & Page, and 100 shares to Robert Sewell in payment of their respective accounts as so audited.

At a meeting of the stockholders held on the sixth of June for the purpose of electing directors, two tickets containing the names of persons for directors were voted; one containing the names of George T. Curtis and twelve other persons for directors; the other containing the names of Harvey Sheldon and six other persons (not named in the first ticket) as such directors. This last ticket was headed as follows: "Ticket to elect the following seven stockholders as a board of directors of the Broadway Underground Connecting Railway Company." For this ticket the petitioner, Origen Vandenburgh, voted the 190 shares of stock standing in his name on the books of the company since October 13, 1880, and his vote was received without objection. Harvey Sheldon voted on one share for this ticket, and the petitioner, by proxy, voted the same ticket for one share each held by two other persons, and one other vote was cast for the same ticket by proxy. No objections were made to these votes. For the first ticket, containing thirteen names, three shares were voted which were issued in 1880, and no objection was made to these votes. Robert Sewell offered to vote on ninety-eight shares of the stock issued to him on the 13th of March, 1882. The petitioner challenged the right of Mr. Sewell to vote on this stock, and for that purpose read the following protest signed by him:

"I, Origen Vandenburgh, a stockholder entitled to vote at this election, challenge and deny the right of Robert Sewell to vote on the ninety-eight shares of stock of this company on which he now offers to vote, on the ground that said Robert Sewell did not appear on the transfer book of the company to have a right to vote thereon on the day when, by the act incorporating this company, this election ought to have been held. It appears by said book that he then had but one share of stock, and he now has the right to vote only on one share of stock.

"That the ninety-eight shares, upon which Mr. Sewell now offers to vote, were issued to him since the first day of March last. That this election, for directors, was required by law to be held on some day between the 27th day of May and the 27th day of July inclusive, in the year 1881, and that, therefore, said Robert Sewell has

no right by law to vote on said ninety-eight shares of stock at this election.

"I inform the inspectors of this election that the books of the company show the above facts and demand their production for this purpose.

"The law prohibiting Mr. Sewell from voting on this stock at this election is section 8, chapter 18, title 4, part 1 of the Revised Statutes, together with section 5 of the General Railroad Law, act of 1850, as since amended.

(Signed)        "O. VANDENBURGH."

This objection and protest were overruled by the chairman and inspectors of election and Mr. Sewell voted on ninety-eight shares for the ticket containing thirteen names. Mr. Sewell then offered to vote by proxy on 145 shares of stock issued to Campbell & Page on the 13th of March, 1882, and the same challenge was interposed. The challenge was overruled and the votes received in favor of the ballot containing thirteen names.

The inspectors at the close of the balloting announced the result of the election to be that George T. Curtis and twelve other persons named on the ticket for thirteen directors had each received 251 votes, and that the ticket headed by Harvey Sheldon, containing six other names, received 193 votes, and that the thirteen persons named in the former of these tickets were duly elected directors of the company for the ensuing year.

Upon these facts the question presented for our consideration is whether the votes challenged by the petitioner were entitled to be cast at the election.

By section 5 of chapter 140 of the Laws of 1850, as amended by chapter 282 of the Laws of 1854, it is enacted that "there shall be a board of thirteen directors of every corporation formed under this act to manage its affairs, and said directors shall be chosen annually by a majority of the votes of the stockholders voting at such election in such manner as may be prescribed in the by-laws of the corporation, and they may and shall continue to be directors until others are elected in their places. In the election of directors each stockholder shall be entitled to one vote, personally or by proxy, on every share held by him thirty

days previous to any such election." The first election of directors having been held on the 27th day of May, 1880, it was the duty of the corporation to have held another election within or at the close of one year from that time. It was also its duty to have adopted by-laws prescribing the time and place of choosing directors at such election. Having failed to perform those duties the directors chosen on the 27th of May, 1880, by operation of the statute just cited, continued to be directors until others were chosen in their place. If there were no other statute affecting the question the right of the persons declared to be elected at the meeting of the 6th of June, 1882, would be indisputable. But the whole subject-matter of such elections, where a corporation has failed in its duty to hold the same according to the requirements of the statute, is regulated and controlled by the general statute, which is applicable to this case.

That statute (1 R. S., 604, § 8) enacts in these words: " If at any time hereafter the election for directors of any bank or other incorporated company of this State shall not be duly held on the day designated and appointed by the act incorporating such bank or other incorporated company, it shall be the duty of the president and directors of such bank or other incorporated company to notify and cause an election for directors to be held within sixty days immediately thereafter, and in all cases no share or shares shall be voted upon, except by such person or persons who may have appeared on the transfer books of said company to have had the right to vote thereon, on the day when, by the act of incorporation of such company, the election ought to have been held, which said right so to vote shall be exercised by the persons so appearing as aforesaid upon the transfer books of such company, on any day when such election may be held."

This provision is general in its terms and applicable to all corporations which are not excluded from its operations by express statute or necessary implication. We think it is applicable to elections of directors in such cases as that now before us. The statute of 1850 does not specify the date on which the election shall be held, but it declares that they shall be held annually, and that is equivalent to an express requirement in the absence of any by-law fixing a date within the year that the election shall be held upon the recurrence in the following year of the day on which

the first election was held, if that be a legal day. In no other way can the provisions of the statute which declares that directors shall be elected annually be complied with. The effect of not complying with that statute set in operation the provisions of the Revised Statutes above quoted, and it became the duty of the president and directors to notify and cause an election for directors to be held within sixty days immediately thereafter.

It is argued that the provisions of the act of 1850 requiring the elections to be annual was inoperative in this case because no by-law had been adopted regulating the manner of holding such election as is also required by that act. Undoubtedly it was the duty of the directors to have adopted such a by-law. The failure to do so was an omission of duty, and, therefore, illegal. The contention is that this illegal neglect to adopt a by-law, rendered the omission to call a meeting for the election of directors a legal one, and, therefore, that the election was not illegally passed, and that as the provision of the Revised Statutes has reference solely to elections which have been illegally passed, it does not apply to this case. But this position is not sound, either in law or logic, for both the omission to adopt the by-law and to hold the election were illegal, and neither can justify the other. Hence, the directors in this case cannot justify the passing of the annual election by asserting their own illegal non-feasance in failing to adopt a by-law regulating the mode, time or place of conducting it. The directors cannot be heard to say that " inasmuch as we did not enact a by-law, which the law required, we are not bound to hold an election which the law also required, and are not, therefore, subject to a statute which provides for such election after a failure to hold it as required by statute." Instead of having that effect, the omission to perform the two duties, under the act of 1850, made more imperative the duty imposed by the prior statute. The election should, therefore, have been called and held within sixty days after the failure to hold the annual election. If this be not the correct construction of the statutes, then the directors first chosen may, by their own wrong, continue themselves in power for an indefinite period, by simply refusing to perform statutory duties, and this, we think, the law will not tolerate. But the failure to hold the election which the statute required in 1881 did not destroy the corporation. It continued in

full vigor until by some action of the State its existence should be terminated for neglect of duty. So the duty to adopt a by-law and to hold an election of directors still remained in force. The adoption of the by-law, on the 20th of March, 1882, was, therefore, a lawful act; and the calling and notice of the election for the sixth day of June, in pursuance of the by-law, were also lawful; and this brings us to the question of the case, which is, what stockholders were entitled to vote at that election?

Section 8 of the Revised Statutes, providing the time within which the election shall be held, is undoubtedly directory; and if the election be not held within sixty days immediately after the failure to hold the annual election, it can be lawfully held at a later period. But that does not abrogate the other provisions of the statute. The statute not only seeks to compel the election within the prescribed time, but it proceeds for a manifest purpose to declare what shares of stock shall be voted upon when such election is held. That purpose is clearly to defeat any intent or attempt to control a subsequent election by creating or issuing new stock within the intervening period. If this provision were not made, a board of directors by its neglect of duty could not only carry over the election beyond the prescribed period, but might continue to do so until such manipulations of stock could be made as would enable them to keep themselves in power. The statute intended to prescribe a rule which would prevent this sort of proceeding, as far as practicable, by enacting that at such subsequent election no share or shares of stock should be voted upon except by such person or persons as shall appear, on the transfer books of the company, to have had the right to vote thereon on the day when the election ought to have been held. This barrier against fraudulent conduct is required by the statute to be applied whether any fraudulent conduct in fact appears or not; and no court is justified in disregarding it, because in a particular case the conduct of the directors may not have been tainted with wrongful intent. In our opinion, the rule prescribed by the statute was in as full force and operation when the election was held on the 6th of June, 1882, as it would have been if such election had been held within sixty days after the expiration of the first year.

It appears very clearly in the case that the stock which controlled

the election under the ruling of the inspectors was issued in March, immediately preceding the election, and had no existence at the time when the election ought to have been held. The scheme of the statute would therefore be defeated in this case by allowing such stock to be voted upon at the election of June 6, 1882. It was properly challenged, and as we think, upon substantial grounds, and the vote upon it should have been rejected. If all stock of that character had been rejected, the ticket containing the name of thirteen directors would have received but three votes, while the ticket containing the name of seven directors received 194 votes, and the result would be that the seven persons named would have been chosen directors. That ticket was not void because it did not contain thirteen names. No stockholder was bound to vote for any larger number of persons than he chose, and any number of persons receiving a majority of lawful votes are elected, although there be a failure to elect the full number required by law. The result of that view is, that it is the duty of the court to declare that the persons named as candidates on the ticket containing seven names were lawfully elected, and they would be sufficient being a majority of thirteen, to constitute a board although there might be a failure to elect others. But section 3 of chapter 582 of the Laws of 1864 provides that any railroad company whose main route of road does not exceed fifteen miles, may elect seven of its stockholders as a board of directors to manage its affairs, at any annual election after the passage of this act. (2 R. S. [6th ed.], 520.) The proposed railroad in this case is but two miles in length. It was therefore in the power of the stockholders to reduce the number of the directors to seven. It was not necessary that that should be done by the action of the board of directors, because the statute clothes the electing body with that power. " Any railroad company may " do this, is the language; and the stockholders at any election are, for the purposes of such election, the company. The stockholders, we think, sufficiently conformed to the requirements of the act. In the ticket which they voted they declared their intention to elect seven stockholders as a board of directors of the railway company. That power the directors could not take from the stockholders. Any construction that permitted them to do so would virtually abrogate the statute granting the power, as a board of thirteen would

have absolute control of the question whether their number should be reduced or not. The statute did not intend to leave it to the board, but to the stockholders themselves when they should convene for the purpose of electing a new board of directors, and if the majority express that intent in the body of the ticket, it is as effective, we think, as though it had been done by a formal resolution entered in the minutes of the meeting.

Under the rule of practice laid down by the court *In the Matter of Desdoity* (1 Wend., 98), the court has power to proceed to declare which contesting board of directors is lawfully chosen. As we have reached the conclusion that the seven persons named in the ticket headed by Harvey Sheldon were duly chosen, it is our duty, we think, to adjudge that they are the lawful directors.

The order of the court below should therefore be reversed, and the prayer of the petition granted, with costs of the appeal, besides disbursements.

Brady and Daniels, JJ., concurred.

Order reversed and petition granted, with ten dollars costs and disbursements.